**Alvin HILL, Petitioner,**

v.

**Morris THIGPEN, Respondent.**

**No. DC 84–230–D–O.**

United States District Court,
N.D. Mississippi,
Delta Division.

July 2, 1987.

James P. Kreindler, New York City, Percy Stanfield, Jr., Jackson, Miss., for petitioner.

Donald G. Barlow, Sp. Asst. Atty. Gen., Jackson, Miss., for respondent.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This cause is before the court on a petition for a writ of habeas corpus by the petitioner Alvin Hill who was convicted of capital murder and sentenced to death in the Circuit Court of DeSoto County, Mississippi, on November 26, 1980. Hill directly appealed his conviction and sentence to the Mississippi Supreme Court wherein the judgment of the lower court was affirmed. *Hill v. State*, 432 So.2d 427 (Miss.1983), *cert. denied*, 464 U.S. 977, 104 S.Ct. 414, 78 L.Ed.2d 532 (1983). Hill then filed a Petition for Writ of Error Coram Nobis which the Mississippi Supreme Court denied in *In re Alvin Hill*, 460 So.2d 792 (Miss.1984). On November 19, 1984, Hill filed the instant Petition for Writ of Habeas Corpus in the United States District Court for the Northern District of Mississippi. This court, pursuant to the order of the Honorable William C. Keady, granted the petitioner an order staying his execution to allow him to present certain unexhausted claims made in the instant petition to the Mississippi Supreme Court. Hill petitioned the state supreme court on those unexhausted claims in a second Petition for Writ of Error Coram Nobis which the Mississippi Supreme Court again denied on April 10, 1985. *In re Alvin Hill*, 467 So.2d 669 (Miss.1985). Having now exhausted all of his claims before the state supreme court, the court proceeds with its ruling on the merits. For the reasons set forth herein, all motions for summary judgment and/or partial summary judgment are denied.

### Statement of Facts

On July 12, 1979, an American Freight Lines Truck, driven by Robert Lee Wat-

kins, was hijacked in DeSoto County, Mississippi. In Tunica County, on July 16, 1979, petitioner Alvin Hill and an accomplice, Sammy Lee Hampton, hijacked and robbed a truck driver employed by the Nat Buring Packing Company. Tunica County Sheriff Hugh Monteith arrested Hill on July 20 for the second hijacking, approximately the same date that Hampton was also arrested for the Tunica County hijacking. On July 19 and 20, Hill was questioned by F.B.I. Special Agent Bobby G. Shanks concerning the hijacking of the American Freight Lines Truck that had occurred on July 12. Hill was again questioned by Shanks on July 25 and on that day, Shanks advised Hill that Hampton had stated that Hill had been involved in the July 12 hijacking that had resulted in the disappearance of the American Freight Lines' driver, Robert Lee Watkins.

On August 17, 1979 at around 6:30 p.m. reserve deputy sheriffs Donald Sutton and Mike Madden found Watkins' body in DeSoto County. Later that evening, Ricky Wayne Ward, Chief Investigator for the DeSoto County Sheriff's office, informed Hill that Watkins' body had been found. One month earlier, on July 18, 1979, Hill's pick-up truck was searched and a U–Haul contract discovered showing that Hill had rented a U–Haul truck bearing Maryland license plate number M91196, the same Maryland license plate that a truck driver, Russell Bowers, had observed parked alongside the American Freight Lines truck at the time of its hijacking. The search was conducted by an F.B.I. agent between 12:00 p.m. and 4:00 p.m. on July 18 and the U–Haul contract was introduced into evidence against Hill at trial. Hill, according to the testimony of Special Agent Ellis Young, consented to the search at 5:30 p.m. on the same day. Other evidence linking Hill to the DeSoto County hijacking of the American Freight Lines truck was a carburetor found in Hill's home that had allegedly been in the American Freight Lines truck.

Finally, on August 18 around 5:00 o'clock p.m., Hill confessed to the robbery and murder of Robert Lee Watkins in the presence of Ward, Tunica County Sheriff Monteith, DeSoto County Sheriff Denver Sowell, and Deputy Bobby Gene Biffle. In his confession, Hill stated that Gregory Tucker and another black male, later determined to be Leverne Milam, aided Hill in the hijacking and robbery of Watkins but that he, Hill, was the one who shot Watkins. Hill confessed that Watkins was on his knees when he first shot Watkins in the back of the head. Hill initially stated that he had thrown the murder weapon into the Cold Water River from a bridge south of Hernando, Mississippi but later on August 18, Hill told Ward that a Mr. Carter of Memphis then had the weapon. On August 19, Sheriff Monteith informed the Memphis Police Department that Robert Carter possessed the pistol used in the Watkins' murder and further informed the Memphis Police of Carter's place of employment. On August 20, two Memphis police officers questioned Carter who told him that he had loaned his pistol to a black man known to him as "Rusty" (later determined to be Hill) and then Carter took the officers to the apartment and surrendered the pistol to them. Although Hill's confession was later ruled involuntary and therefore inadmissible at trial, the pistol was admitted into evidence along with the U–Haul contract found in Hill's truck and the carburetor found in Hill's dwelling.

Both Hill and Hampton pled guilty to the Tunica hijacking and Hill was sentenced to a 20–year incarceration and Hampton was sentenced to a 17–year incarceration. On October 5, 1979 Hill, Tucker and Leverne Milam were indicted for the murder of Robert Lee Watkins committed in the commission of robbery and capital murder under Mississippi Code Annotated § 97–3–19(2)(e). Hill's trial for capital murder began on November 17, 1980. Gregory Tucker, who pled guilty to a charge of manslaughter, testified for the state. The jury found Hill guilty of capital murder and upon conclusion of the sentencing phase of the trial, unanimously found that Hill should suffer the penalty of death.

Before addressing the substantive claims raised by Hill in support of his petition, the court will first discuss two alleged proce-

dural bars raised by the state in their briefs. Once these procedural matters have been resolved, Hill's substantive claims will be addressed.

### The Application of Mississippi's Contemporaneous Objection Rule

In *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court considered the availability of federal habeas corpus to review a state inmate's constitutional claim where the petitioner had failed to comply with the state's contemporaneous objection rule. The Court held that when a procedural default, such as the contemporaneous objection rule, bars litigation of a constitutional claim in state court, federal courts are likewise precluded from addressing the merits and federal habeas relief is unavailable unless the petitioner can show "cause" for non-compliance and some "actual prejudice" resulting from the alleged constitutional violation. 433 U.S. at 84, 97 S.Ct. at 2505; *see also Bates v. Blackburn*, 805 F.2d 569, 574 (5th Cir.1986) (summarizing the *Sykes* decision), *cert. denied*, —— U.S. ——, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987). In *Bates v. Blackburn*, 805 F.2d at 574, the Fifth Circuit stated:

> After *Sykes*, a federal habeas court is called upon to make the following analysis before relief may be granted. First it must decide whether the state court applied the procedural bar in denying the petitioner's federal constitutional claim. Second, assuming that a state court applied the procedural bar, the federal court must consider whether there was adequate cause for the petitioner's failure to comply with the procedural rule. And third, assuming adequate cause, the federal court must decide whether the petitioner suffered actual prejudice from the alleged constitutional violation before habeas relief may be granted. Cause-and-prejudice-analysis is, therefore, triggered only if the federal court determines that the state courts have refused to hear a petitioner's federal constitutional claim because of a state law procedural default.

A recognized exception, however, to the rule that a federal court will not reach an issue which the state courts refused to reach due to a procedural default is where the procedural rule is not "strictly or regularly followed." *Wheat v. Thigpen*, 793 F.2d 621, 624 (5th Cir.1986) (citing *Hathorn v. Lovorn*, 457 U.S. 255, 262–63, 102 S.Ct. 2421, 2426, 72 L.Ed.2d 824, 832 (1982)); *see also James v. Kentucky*, 466 U.S. 341, 104 S.Ct. 1830, 80 L.Ed.2d 346, 353 (1984) (only state procedural rules that are "firmly established and regularly followed" can prevent implementation of federal constitutional rights); *Hathorn, supra,* 457 U.S. at 263, 102 S.Ct. at 2426, 72 L.Ed.2d at 833 (state courts may not avoid deciding federal issues by invoking procedural rules that they do not apply even-handedly to all similar claims); *Henry v. Mississippi*, 379 U.S. 443, 448 n. 3, 85 S.Ct. 564, 567 n. 3, 13 L.Ed. 408, 413 n. 3 (1965) (state procedural rule must be "clearly announced to defendant and counsel").

On Hill's direct appeal to the Mississippi Supreme Court, the majority of the Court stated, in responding to the contention that the prosecutor's "last word" argument constituted reversible error:

> In this case, however, there was no objection made to this argument. We have consistently held that contemporaneous objection must be made to improper argument by the state, and unless such objection is made, any claimed error for such improper argument would not be considered on appeal. *See Coleman v. State*, 378 So.2d 640 (Miss.1979); *Thomas v. State*, 358 So.2d 1311 (Miss.1978); *Griffin v. State*, 292 So.2d 159 (Miss. 1974); *Myers v. State*, 268 So.2d 353 (Miss.1972); *Peterson v. State*, 242 So.2d 420 (Miss.1970); *Ford v. State*, 227 So.2d 454 (Miss.1969); *Showers v. State*, 227 So.2d 452 (Miss.1969); and *Coburn v. State*, 250 Miss. 684, 168 So.2d 123 (1964). It need also be noted that this holding is applied to death penalty cases, as well as other criminal and civil cases.

*Hill v. State*, 432 So.2d 427, 439–40 (Miss. 1983), *cert. denied*, 464 U.S. 977, 104 S.Ct. 414, 78 L.Ed.2d 352 (1983). However, in a dissenting opinion it was stated:

My principal target is the statement in part III(a) of the majority opinion, at pages 439–440, that this Court has consistently applied a contemporaneous objection rule in death penalty cases. The statement is wrong as a matter of fact. Far more of our cases going back into other decades have declined to invoke procedural bars in capital cases. Beyond that, the statement is wholly at odds (a) with constitutional imperatives enunciated by the Supreme Court of the United States, (b) with a mandate of the legislature of this state regarding appellate review, Miss.Code.Ann § 99–19–105, and (c) with this Court's plain error rules, Miss. Sup.Ct. 1 Rules 6(b) and 42.

432 So.2d at 444. The dissenting opinion points out that the majority relies upon eight cases and that not one of these cases involves the affirmance of a death sentence; that three of the cases—*Thomas, Ford* and *Showers*—were not murder cases; that *Griffin* and *Coburn* were murder cases in which a life sentence had been imposed in the trial court; and that only *Coleman, Myers* and *Peterson* were cases where the death penalty had been imposed in the trial court but that in each of those cases, the sentence of death was vacated for varying reasons. 432 So.2d at 447. Then it was further stated:

Absent citation to a case in this Court where an otherwise reversible error was held precluded from consideration on the merits by virtue of a failure timely to preserve the point for appeal, and where the death sentence was in fact affirmed, we suggest that the majority holding is simply *without precedent in this state*.[1]

*Id.* at 427. A number of Mississippi cases were then listed where the death penalty had been imposed by the trial court and the Mississippi Supreme Court had ignored procedural requirements for preservation of error and had proceeded to decide the issues on the merits. The cases cited in the dissent were: *Fisher v. State,* 145 Miss. 116, 134, 110 So. 361, 365 (1926) (failure to contemporaneously object to a confession did not preclude reversal because "constitutional rights for a person on trial for his life rise above mere rules of procedure"); *Ross v. State,* 185 Miss. 438, 445, 188 So. 295 (1939) (Court's duty to apply "closest scrutiny" in death penalty cases since community may taint the verdict); *Carter v. State,* 198 Miss. 523, 528, 21 So.2d 404 (1945) (errors affecting fundamental rights present an exception to the general rule that errors cannot be raised for the first time on appeal); *Musselwhite v. State,* 212 Miss. 526, 535, 54 So.2d 911, 914–15 (1951) (merits of an evidentiary issue reached even though trial court was not afforded an opportunity to pass on the proposition); *Bell v. State,* 360 So.2d 1206, 1215, 1216–18 (Miss.1978) (erroneous instructions not urged on appeal still considered); *Voyles v. State,* 362 So.2d 1236, 1237 (Miss.1978) (court carefully studied every aspect of the case to insure that unassigned errors were not present); *Culberson v. State,* 379 So.2d 499, 506 (Miss.1980) (instruction question considered on merits though no formal objection lodged); *Wheat v. State,* 420 So.2d 229, 239 (Miss.1982) (same). *Hill,* 432 So.2d at 448. All of these cases cited by the dissent were death penalty cases.

More recently, in *Williams v. State,* 445 So.2d 798 (Miss.1984), *cert. denied,* 469 U.S. 1117, 105 S.Ct. 803, 83 L.Ed.2d 795 (1985), the defendant was convicted of murder while engaged in the crime of robbery, as in the case at bar, and after a separate trial on the sentencing phase, the death sentence was imposed. In that case, the

**1.** In *Booker v. State,* 449 So.2d 209 (Miss.1984), the Mississippi Supreme Court utilized the contemporaneous objection rule in refusing to consider the prosecutor's reference to an "automatic appeal" in his closing argument to the jury. In *Booker,* the death sentence was affirmed. However, the Court ruled that, in many cases, the defense invited the prosecutor's error and that, under Mississippi law, invited errors do not warrant reversal. *Id.* at 219. Further, the cases cited in *Booker* for the proposition that a contemporaneous objection is required in order to preserve the right to raise the assigned error on appeal were *Coleman v. State,* 378 So.2d 640 (Miss.1979) and *Cartwright v. State,* 71 Miss. 82, 14 So. 526 (1893). However, in *Coleman,* the death sentence was reversed and a life sentence imposed. 378 So.2d at 650. *Cartwright* was not a death penalty case at all. 14 So. at 527. Other than *Booker,* this court found no other Mississippi cases where a death sentence was affirmed.

guilt phase was affirmed while the sentence phase was reversed and remanded for a new sentence phase trial because of the cumulative effect of three errors, which were: (1) the prosecutor's remarks to the jury concerning appellate review; (2) the remarks to the jury concerning the possibility of parole; and (3) defendant's failure to testify which gave rise to a possibility that the verdict was imposed under influence of passion, prejudice and other arbitrary factors. The Mississippi Supreme Court distinguished the case *sub judice* of *Hill v. State*, 432 So.2d 427 (Miss.1983) saying that the cumulative effect of the three points stated above required reversal whereas the lone error of the "last word argument" to the jury in *Hill* did not constitute reversible error. *See Hill v. State*, 432 So.2d 427 (Miss.1983). However, in the *Williams* decision, as in the case *sub judice*, there was no contemporaneous objection to the prosecutor's closing argument to the jury to the effect that the defendant would have certain automatic stages of appeal to pursue. 445 So.2d at 810. In *Williams*, the Mississippi Supreme Court stated:

> We have long held that unwarranted and improper remarks of a district attorney would warrant reversal where there was a "most extreme and intolerable abuse of his privilege", even without defendant attorney's objection.

445 So.2d at 810 (citing *Cartright v. State*, 71 Miss. 82, 14 So. 526 (1893), *Powers v. State*, 83 Miss. 691, 36 So. 6 (1904), *Regan v. State*, 81 Miss. 422, 39 So. 102 (1906), *Bufkin v. State*, 134 Miss. 116, 98 So. 455 (1924)).

More recently, the United States Supreme Court explicitly recognized that the Mississippi Supreme Court has exercised the prerogative of relaxing its contemporaneous objection and plain error rules, particularly in capital cases. *See Caldwell v. Mississippi*, 472 U.S. 320, 328, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231, 239 (1985). As the U.S. Supreme Court stated:

> Moreover, this conclusion is consistent with the Mississippi Supreme Court's behavior in other capital cases, where it has a number of times declined to invoke

procedural bars. *See e.g., Williams v. State*, 445 So.2d 798, 810 ([Miss.] 1984) (explicitly citing *Bell* as authority for the proposition that "we have in death penalty cases the prerogative of relaxing our contemporaneous objection and plain error rules when the interest of justice so requires."); *Culberson v. State*, 379 So.2d 499, 506 (1979) (reaching merits "only because this is a capital case" where counsel failed to follow Rule requiring prior objections to jury instructions).

472 U.S. at 328, 105 S.Ct. at 2639, 86 L.Ed.2d at 239. In so ruling, the Supreme Court essentially restated Justice Black's dissent in *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), wherein he quoted from *Brooks v. State*, 209 Miss. 150, 155, 46 So.2d 94, 97 (1950) (en banc):

> Constitutional rights in serious criminal cases arise above mere rules of procedure.... Errors affecting fundamental rights are exceptions to the rule that questions not raised in the trial court cannot be raised for the first time on appeal.

■ The court is aware of authority within this circuit holding that Mississippi's contemporaneous objection rule has been consistently applied in death penalty cases. *See Pruett v. Thigpen*, EC 84–31–LS (N.D. Miss.) [Available on WESTLAW, DCT database] (Mississippi Supreme Court has consistently required contemporaneous objection in order to preserve improper argument for appellate review), *aff'd without opinion*, 805 F.2d 1032 (5th Cir.1986); *Johnson v. Thigpen*, 623 F.Supp. 1121, 1128 (S.D.Miss.1985) (occasional exercise of discretion by state court in reaching merits of claim possibly barred by contemporaneous objection rule does not require federal court to disregard that rule in all cases), *aff'd*, 806 F.2d 1243 (5th Cir.1986). *But see Edwards v. Thigpen*, 595 F.Supp. 1271, 1278 (S.D.Miss.1984) (well-established law in Mississippi has been that appellate review of death penalty cases will be conducted painstakingly *and in spite of procedural niceties* ) (emphasis added) (citing *Wheat*

*v. State,* 420 So.2d 229, 239 (Miss.1982); *Smith v. State,* 419 So.2d 563, 568 (Miss. 1982); *Culberson v. State,* 379 So.2d 499, 506 (Miss.1980); *Musselwhite v. State,* 212 Miss. 526, 54 So.2d 911, 914–15 (1951); *Gipson v. State,* 203 Miss. 434, 437, 35 So.2d 327, 328 (1948); *Carter v. State,* 198 Miss. 523, 528, 21 So.2d 404 1945); *Fisher v. State,* 145 Miss. 116, 110 So. 361 (1926). The court is also aware that the Fifth Circuit stated in *Young v. Herring,* 777 F.2d 198 (5th Cir.1985) that "Mississippi has long had a contemporaneous objection rule, under which its Supreme Court considers on appeal only those grounds of objection timely raised in the trial court." *Id.* at 203 n. 9. However, *Young,* again was not a death penalty case and neither were any of the Mississippi cases cited directly in support of the Fifth Circuit's statement. The court is further cognizant of the Fifth Circuit's ruling in *Bass v. Estelle,* 705 F.2d 121 (5th Cir.1983), relied upon by the district court in *Johnson v. Thigpen,* 623 F.Supp. at 1128, that an "occasional act of grace" by a state court in reaching the merits of a claim that might be barred by the state's contemporaneous objection rule does not require a federal court to disregard that procedural rule in all cases. 705 F.2d at 122–23. However, from this court's extensive review of Mississippi law and the volume of opinions decided by the Mississippi Supreme Court where the contemporaneous objection rule was ignored or waived, the court concludes that the contemporaneous objection rule had not been consistently applied in death penalty criminal cases in Mississippi as late as 1984 and that application of this procedural rule prior to this time in Mississippi death penalty cases can only be characterized as the exception rather than the rule. This conclusion is supported not only by *Williams v. State,* 445 So.2d at 798 and the Mississippi Supreme Court cases cited herein where that court declined to invoke the contemporaneous objection death penalty cases but also by the U.S. Supreme Court's recogni-

tion in *Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231, 239 (1985) that the Mississippi Supreme Court has declined to invoke procedural bars "a number of times" and their citations to *Williams v. State,* 445 So.2d 798, 810 (Miss.1984) (prosecutor's alleged improper remarks considered although no objection at trial), (*cert. denied,* 469 U.S. 1117, 105 S.Ct. 803, 83 L.Ed.2d 795 (1985) and *Culberson v. State,* 379 So.2d 499, 506 (Miss.1979) (propriety of jury instruction addressed although no objection to instruction at trial). This court's conclusion is further supported by *Toney v. State,* 298 So.2d 716, 720 (Miss.1974) where the Mississippi Supreme Court raised, on its own motion, an objection to an instruction that had not been objected to at trial. The particular significance of the court's action, however, was that this *sua sponte* consideration of the objection was taken in a *non-capital* offense case. *Id.* at 717. For all of these reasons, Mississippi's contemporaneous objection "rule" in death penalty cases will not act to bar this court's consideration of alleged reversible trial errors whether timely objection thereto was made or not.[2]

### The Alleged Unconstitutional Extension of the Procedural Default Rule in Mississippi

A second procedural bar discussed by the parties is that of post-conviction waiver. Under this rule, Mississippi procedure prevents a defendant from raising, in a post-conviction proceeding, claims that he did not raise on direct appeal. Hill argues that the Mississippi Supreme Court announced a new rule of law in invoking this procedural bar in the case of *Edwards v. Thigpen,* 433 So.2d 906 (Miss.1983). The Fifth Circuit has recently considered whether this state procedural rule had been consistently applied by the Mississippi Supreme Court as of 1983. *Wheat v. Thigpen,* 793 F.2d 621 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987). In

**2.** This court's ruling is limited to those death penalty cases where the defendant's conviction and direct appeal occurred prior to 1984. The court has not undertaken to determine the con-

sistency of application of the contemporaneous objection rule in death penalty cases in Mississippi subsequent to that time.

*Wheat,* the defendant's trial and direct appeal occurred prior to the Mississippi Supreme Court's decision in *Edwards v. Thigpen, supra.* The Fifth Circuit stated:

> We are therefore persuaded that the Mississippi Supreme Court had not clearly announced or strictly or regularly followed the procedural bar at the time of Wheat's direct appeal. Thus, no independent and adequate state grounds exist to prevent federal review of Wheat's claim concerning the prosecutor's closing argument.

793 F.2d at 626–27.

■ As in *Wheat,* Hill's trial and direct appeal to the Mississippi Supreme Court occurred prior to the Supreme Court's decision in *Edwards v. Thigpen* in 1983. Accordingly, the failure of Hill's counsel to raise certain matters on direct appeal does not preclude Hill from raising such matters before this court. *See Johnson v. Thigpen,* 623 F.Supp. 1121, 1128 (S.D.Miss.1985) (court's refusal to apply retroactively procedural bar invoked by Mississippi Supreme Court on a post-conviction error coram nobis petition for issues not raised on direct appeal to Mississippi Supreme Court is limited to cases where direct appeal was taken prior to March 23, 1983 decision of Mississippi Supreme Court in *Edwards v. Thigpen,* 433 So.2d 906 (Miss.1983)), *aff'd,* 806 F.2d 1243 (5th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1618, 94 L.Ed.2d 802 (1987).

The petitioner has listed and argued nearly two dozen different grounds in his petition for a writ of habeas corpus. The court has determined that the state committed three reversible errors in the petitioner's trial and that his death sentence should be vacated and the case remanded for a new trial with respect only to the sentencing phase. The court will first address those three errors which it determines to require resentencing and then will discuss the other assignments of error made by Hill that the court deems to be without merit.

### The State's Improper "Last Word" Argument

During the sentencing phase of the trial, the prosecutor argued to the jury that their verdict regarding the imposition of the death penalty was not the "last word". As the prosecutor stated:

> I knew that the attorneys would attempt to place a heavy burden on you. They would have you believe that you are voting to kill the Defendant and that he is going to be taken outdoors here in 10 minutes and hung. That's not so, and they know that's not so and that's unfair. That's totally unfair. They know your word is not the last word. They know that.

(Tr. 1190–1191).

On direct appeal to the Mississippi Supreme Court, the Court stated that the "last word" argument made by the prosecutor to the jury was "clearly erroneous" and that "in a death penalty case a jury should never be given false comfort that any decision they make will, or can be, corrected." *Hill v. State,* 432 So.2d at 439. Further, the Court noted that it had condemned a "last word" argument in a case that was not a death penalty case and finally stated that a prosecutor "making this sort of argument is asking for a mistrial." *Id.* However, the supreme court ruled that since Hill's trial attorneys had failed to object to the argument made by the prosecutor, they were barred from making any such claim of error on appeal. *Id.*

This court has ruled herein that Mississippi has not consistently applied its contemporaneous objection rule in death penalty cases. For this reason, this court holds that this procedural bar invoked by the Mississippi Supreme Court does not constitute an independent and adequate state ground to bar review of unobjected to claims in this court. Therefore, such claims will be considered on the merits by this court. *See Edwards v. Thigpen,* 595 F.Supp. 1271, 1279 (S.D.Miss.1984) (where procedural bar invoked by state supreme court is found to not constitute an independent and adequate state ground, federal court is not barred from viewing claims on merits).

■ The United States Supreme Court recently considered a similar argument made by a state prosecutor in a Mississippi trial in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). The Supreme Court ruled that it was "constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." 472 U.S. at 328–29, 105 S.Ct. at 2639, 86 L.Ed.2d at 239. The Supreme Court stated its rationale for this ruling as follows:

> [T]he uncorrected suggestion that the responsibility for any ultimate determination of death rests with others presents an intolerable danger that the jury will in fact choose to minimize the importance of its role. Indeed one can easily imagine that in a case in which the jury is divided on the proper sentence, the presence of appellate review could effectively be used as an argument for why those jurors who are reluctant to invoke the death sentence should nevertheless give in.

472 U.S. at 333, 105 S.Ct. at 2641–42, 86 L.Ed.2d at 242. The Supreme Court then ordered that the death sentence be vacated. 472 U.S. at 341, 105 S.Ct. at 2646, 86 L.Ed.2d at 247. This court is therefore bound to do likewise.

### The State's Introduction of a Co-Defendant's Conviction

■ In *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the United States Court held that the failure of the prosecution to fully reveal or disclose to a jury plea-bargaining negotiations with a key witness deprives a defendant of his constitutional due process rights. 405 U.S. at 153–55; *see also United States v. Kehm*, 799 F.2d 354, 358 (7th Cir.1986) (prosecutor must reveal promises of immunity under *Giglio* ); *United States v. Leslie*, 759 F.2d 366, 376 (5th Cir.1985) (important aspect of prosecutor's duty under *Giglio* is to present to jury complete picture of plea agreement between witness and Government). In the case at bar, Gregory Tucker,

Hill's co-defendant in the DeSoto County murder, was allowed to plead guilty to a reduced charge of manslaughter in a state-recommended sentence of 12 years imprisonment in return for a promise by Tucker to testify against Hill. Tucker later received a 12–year sentence. Tucker made this agreement just one hour prior to his testimony at Hill's trial. On direct examination, Tucker testified in response to the state's questions as follows:

Q: Gregory, I direct your attention to— strike that, please, ma'am. First of all, let me ask you this. Gregory, have you ever been convicted of anything?

A: Yes, sir.

Q: What have you been convicted of?

A: Assault and larceny of a person in Tennessee, and manslaughter down here.

Q: Manslaughter down here in connection with what?

A: With this here case.

(Tr. 1013–14). On cross-examination, Hill's attorney elicited the following testimony from Tucker:

Q: All right. When were you convicted of manslaughter in Mississippi?

A: About a hour ago.

Q: You are testifying that you were offered no leniency whatsoever to change your prior testimony and testify today?

A: No

Q: You are testifying that you were convicted of manslaughter about an hour ago?

A: Yes.

Q: With regard to this homicide?

A: Yes, by me being in conspiracy to the case.

(Tr. 1043). *Giglio* applies to the prosecution's use of false evidence or perjured testimony but also applies when the prosecution "passively but knowingly" allows false evidence to go uncorrected to the jury or where the prosecution "allows the jury to be presented with a materially false impression." *United States v. Anderson*,

574 F.2d 1347, 1355 (5th Cir.1978). It is evident that, contrary to Tucker's testimony on cross, the state offered Tucker some leniency in exchange for his testimony against Hill. Further, having heard such evidence without a cautionary instruction, the jury may well have taken Tucker's conviction as evidence of Hill's guilt. It is generally recognized that a defendant has a right to have the question of his guilt determined upon the evidence against him and not on whether a co-defendant has pled guilty to charges stemming from the same set of events. *See United States v. Bass,* 562 F.2d 967, 970 n. 3 (5th Cir.1977); *United States v. Fleetwood,* 528 F.2d 528, 532 (5th Cir.1976); *Babb v. United States,* 218 F.2d 538, 542 (5th Cir.1955). For these reasons, the court concludes that constitutional error occurred.

▪▪▪ Considering this error, however, the court concludes that only the death sentence should be vacated. As to the *Giglio* violation, a new trial is necessary only where there is a reasonable likelihood that the jury's verdict might have been different. *United States v. Anderson,* 574 F.2d 1347, 1356 (5th Cir.1978). In making the determination, a court must assess the weight of the independent evidence of guilt and the importance of the witness' testimony. *Id.* In the case at bar, as in *Anderson,* strong evidence of Hill's guilt exists even without the testimony of Gregory Tucker. The evidence linking Hill to the U–Haul truck that Russell Bowers observed parked beside the American Freight Lines truck driven by the victim, the finding of a carburetor in Hill's home that had been in the American Freight Lines truck and the ballistics test showing that the weapon borrowed from Robert Carter was of the same caliber used in killing Watkins all prove rather clearly that Watkins' murderer was Alvin Hill. Also, Hill's attorneys had the opportunity to cross-examine Tucker regarding his plea but failed to adequately delve into this matter, allegedly because of their unfamiliarity with *Giglio. See United States v. Nixon,* 634 F.2d 306,

313 (5th Cir.1981) (since late disclosure did not prejudice full impeachment of witness, reversal unwarranted), *cert. denied,* 454 U.S. 828, 102 S.Ct. 120, 70 L.Ed.2d 103 (1981).

Further, when a co-defendant's guilty plea is introduced to the jury against the defendant, the Fifth Circuit considers whether such evidence was admitted for impeachment purposes, whether there was improper emphasis or use of the pleas as substantive evidence, whether defense counsel invited the error, the presence or the absence of objections, whether the failure to object was a matter of trial tactics and whether the admission was harmless error. *United States v. King,* 505 F.2d 602 (5th Cir.1974). Hill's trial attorneys have submitted affidavits to this court, stating in effect, that their failure to object to this portion of Tucker's testimony was not a matter of trial strategy. However, as recognized by the Mississippi Supreme Court on direct appeal, the prosecution's questioning of Tucker on this point was "not altogether a one way street benefiting the state." 432 So.2d at 439. As the state supreme court noted, the defendant's trial attorneys compared Tucker's comparatively light punishment with the punishment then being sought for Hill on at least three different occasions in closing argument. *Id.* Given the strength of the independent evidence against Hill, the fact that his trial attorneys failed to object to Tucker's testimony regarding his conviction and that his trial attorneys used the evidence in an attempt to benefit Hill, the court is of the opinion that the conviction of Hill need not be set aside even though Tucker's testimony was introduced during the guilt/innocence phase.[3]

The Trial Court's Error in Failing to Clearly Instruct the Jury of Their Option to Return a Verdict of Life Imprisonment.

The defense requested Proposed Instruction D–2 which read that "You need not find any mitigating circumstances in order

---

**3.** As of 1977, the Fifth Circuit had found plain error in only one case where a co-defendant's guilty plea had been introduced to the jury against a separate defendant. *United States v. Bass,* 562 F.2d at 969.

to return a sentence of life imprisonment. A life sentence may be returned regardless of the evidence." This instruction was refused. (Tr. 1175). As to mitigating circumstances, the jury was instructed:

If you find from the evidence that one or more of the preceding elements of mitigation exists, then you must consider whether they outweigh the aggravating circumstances you previously found, and you must return one of the following verdicts. The verdict you return must be written on a separate sheet of paper. 1) "We, the Jury, unanimously find that the aggravating circumstance or circumstances of:

_____

_____

_____ .

_____

_____

outweigh the mitigating circumstances and are sufficient to impose the death penalty, and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances and we unanimously find that the Defendant should suffer death."

_____

Foreman of the Jury

2) "We, the Jury, find that the defendant should be sentenced to life imprisonment."

3) The Jury has been unable to agree unanimously on punishment.

(Tr. 427–28). The state argues that the jury was clearly instructed that it must find at least one aggravating circumstance in order to impose the death penalty and that the jury was further instructed that if any aggravating circumstances were found, the jury was to consider any mitigating circumstances. After considering both the aggravating and mitigating circumstances, the state argues, the jury was informed that one of its options included a finding that the "Defendant should be sentenced to life imprisonment." The state asserts that this is sufficient under *Evans v. Thigpen,* 631 F.Supp. 274, 286–87 (S.D. Miss.1986), *aff'd,* 809 F.2d 239 (5th Cir. 1987), *cert. denied,* —— U.S. ——, 107 S.Ct. 3278, 97 L.Ed.2d 782 (1987).

In *Evans,* however, the refused instruction sought by the defense provided:

The Court instructs the jury that even if you find that aggravating circumstances outweigh the mitigating circumstances,

you may still recommend mercy and sentence the defendant to life imprisonment.

631 F.Supp. at 286. The requested instruction in the case at bar stated, in effect, that a life sentence could be imposed even if no mitigating circumstances were found to exist. The instruction refused by the court in *Evans* merely instructed the jury that once they had found mitigating circumstances and aggravating circumstances, then a life sentence could still be imposed even if the aggravating circumstances outweighed the mitigating ones. In fact, in *Evans,* the jury was instructed that "You are not required to find any mitigating circumstances in order to make a recommendation of mercy that is binding on the trial court...." 631 F.Supp. at 387.

In affirming the district court, the Fifth Circuit ruled that the instruction requested but refused therein was unnecessary cause of the following two related instructions. These instructions provided:

Even if you find the existence of one, two, or three or more aggravating circumstances, you still can conclude that the circumstances are insufficient to warrant death, and you may impose a sentence of life imprisonment.

The jury was further instructed that:

You are not required to find any mitigating circumstance in order to make a recommendation of mercy as binding on the trial court....

809 F.2d at 243. The Fifth Circuit stated that these two instructions satisfied the requirement under *Chenault v. Stynchombe,* 581 F.2d 444, 448 (5th Cir.1978) that the jury must be clearly informed of its option to return a verdict of life imprisonment. 809 F.2d at 239. In *Chenault,* the Fifth Circuit had stated that it understood the United States Supreme Court decisions of *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and *Bell v. Ohio,* 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978) to "mandate that the judge *clearly instruct the jury about* mitigating circumstances and *the option to recommend against death*". (emphasis added).

■ This court is of the opinion that the jury in the case at bar was not "clearly instructed" about their option to recommend a life sentence even if they found no mitigating circumstances to exist. Were it clear from the record that the jury had found no mitigating circumstances to exist but then had proceeded to impose the death penalty, this error could not be said to have been prejudicial. However, the jury's verdict does not disclose whether the jury found any mitigating circumstances to exist or not but simply provides that they found certain aggravating circumstances to outweigh the mitigating circumstances. (Tr. 1197–98).

These three errors, certainly when taken in conjunction with each other, require that Alvin Hill's death sentence be vacated and the cause remanded for resentencing. The court now proceeds to discuss those remaining claims made by the petitioner.

### Petitioner's Claims That Certain Other Jury Instructions Should Have Been Given and/or Modified

The defense further argues that instruction S3–A prescribed the form of the jury's verdict and that this was the verdict that the jury returned. Apparently, the defense argues that the signature for the foreman of the jury only appeared after the first of three options which were provided to the jury. The first option was the one stating that the jury found that the aggravating circumstances outweighed the mitigating circumstances and that the defendant should suffer death. No blanks for the jury foreman were provided after options 2 and 3. Although the court is of the opinion that blanks for the foreman's signature should have been provided after each option, the court is of the opinion that no constitutional error occurred.

■ The defense also argues that their instruction to the jury that "in order to impose a death sentence, you must be convinced beyond reasonable doubt that the totality of the mitigating circumstances" should have been given. The court is of the opinion that this instruction was essentially covered by the state's instruction, S–3A which informed the jury that, in or-

der to return the death penalty, they had to find that the aggravating circumstances outweighed the mitigating circumstances and that they further had to find "unanimously ... beyond a reasonable doubt that the preceding aggravating circumstances exist in this case to return the death penalty."

Finally, the defense argues that proposed instruction D–8 which would have told the jury they could find that the aggravating circumstances outweighed those in mitigation but that they could still find the aggravating circumstances insufficient to support a death sentence should have been given. Again, the court concludes that this instruction was essentially provided for in instruction S–3A.

### The Assignment of Error With Regard to the Admission of "Fruit of the Poisonous Tree"

As stated in the court's recitation of the facts, Hill confessed to murdering Watkins on August 18 in the presence of Sheriff Monteith, Sheriff Sowell, Deputy Gene Biffle and Investigator Ward. Hill also told these individuals that he had thrown the murder weapon into the Coldwater River near Hernando, Mississippi. However, later that evening, Hill told Ward that Robert Carter of Memphis had the pistol instead. The following day, Sheriff Monteith telephoned the Memphis Police Department and informed them of the whereabouts of the weapon. Hill's confession was later ruled inadmissible. Therefore, unless Sheriff Monteith learned of the location of the murder weapon from an independent source, then Hill's confession is the "poisonous tree" and the murder weapon which was introduced at trial is the fruit of that poisonous tree. If this is so, then both the confession and the introduction of the murder weapon at trial should have been barred.

On appeal to the Mississippi Supreme Court, the Court conceded that after a review of the record, a question existed as to whether Monteith learned of the true whereabouts of the weapon from Sammy Hampton, a possible independent source. 432 So.2d at 435. Hampton achieved this

status as a result of the testimony of Sheriff Monteith at trial when Monteith was questioned as to whether he had occasion to interview Hampton during the course of his investigation. Monteith replied that he had interviewed Hampton and then when questioned, "As a result of *those interviews*, did you at any time inform officers of the Memphis Police Department where a possible gun could be found?", Monteith replied "I did." (Tr. 818) (emphasis added). Later, during Hill's testimony, Hill was asked whether he had told Hampton about the whereabouts of the pistol and Hill replied that he had not and also that he had not told Monteith anything about the true whereabouts of the pistol. (Tr. 931). However, on redirect Hill indicated that he had thought that Monteith's testimony concerned the weapon used on the meat truck hijacking. When asked who had supplied that weapon, Hill testified that Hampton had obtained the weapon from a next door neighbor to whom Hampton had later returned it. (Tr. 933).

As the state supreme court pointed out, neither the state nor the defense called either Ward or Monteith later to testify to clear up this ambiguity. The defense now seeks to introduce the affidavit of Sammy Hampton to the effect that he did not know the whereabouts of the weapon used to murder Robert Lee Watkins prior to the afternoon of August 19, 1979, that he did not know Robert Carter at the time and that, therefore, he did not tell Sheriff Monteith that the murder weapon could be found in Robert Carter's possession.

■■■■ With regard to newly discovered evidence as a ground for habeas relief, such evidence cannot support either a motion for a new trial or a habeas application where the evidence could have been discovered by reasonable diligence before the conviction. *Davis v. Blackburn*, 789 F.2d 350, 352 (5th Cir.1986) (citing *United States v. Robinson*, 585 F.2d 274, 280 (7th Cir.1978) (en banc), *cert. denied*, 441 U.S. 947, 99 S.Ct. 2171, 60 L.Ed.2d 1051 (1979). This court is of the opinion that the allegations contained in Hampton's affidavit certainly could have been discovered prior to

Hill's conviction if only Hill's attorneys had questioned Hampton or recalled either Monteith or Ward to clear up the question of how Monteith learned of the murder weapon's true whereabouts. Therefore, the court concludes that Hill cannot obtain relief on this contention.

### The Claim That the Search of Hill's Truck Violated His Fourth, Eighth and Fourteenth Amendment Rights.

Similarly, Hill claims that the consent to search his truck was only given to the police officers after they had already conducted the search. As a result of this search, the U-Haul rental contract bearing Hill's name and showing the license plate of the rented truck was discovered and introduced into evidence against Hill. Hill's attorneys never tried to suppress the fruits of this search before trial, did not raise the issue at trial, and further failed to raise it on direct appeal.

■■■■ The court considers this as newly discovered evidence which again, in its opinion, could have been discovered by the exercise of due diligence either before or at the time of trial. Further, the court is of the opinion that the U-Haul contract would have been discovered anyway and would have been admissible under the inevitable discovery exception to the exclusionary rule.

Brenda Scarbrough, an employee of the U-Haul company in Memphis, Tennessee, testified that the F.B.I. gave her a license plate number and that she matched the tag number with a truck number on her computer and produced a copy of the contract that Allen Hill had signed. (Tr. 886–95). The F.B.I. had obtained the license plate number given to Scarbrough from Russell Bowers. Therefore, the state could have relied solely upon the testimony of Russell Bowers and Brenda Scarbrough to produce evidence that Alvin Hill rented the U-Haul truck which was used to transport the stolen items taken from the American Freight Lines truck.

■■■■ In *Hill v. State*, 432 So.2d at 436 n. 4, the Mississippi Supreme Court stated

that, as of the date of their opinion, the Fifth Circuit had not accepted the inevitable discovery exception to the exclusionary rule, citing *United States v. Houltin,* 525 F.2d 943 (5th Cir.1976), *modified,* 553 F.2d 991 (5th Cir.1977). However, this is a misstatement of the law. *See United States v. Brookins,* 614 F.2d 1037, 1042 (5th Cir.1980) (the court concluding that certain testimony was properly admitted under both the attenuation exception and inevitable discovery exception to exclusionary rule); *see also United States v. Cherry,* 759 F.2d 1196, 1204 (5th Cir.1985) (stating that Fifth Circuit set forth prerequisites to invocation of inevitable discovery exception to be applied in Fifth Circuit in *United States v. Brookins* ), *cert. denied,* —— U.S. ——, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987). The prerequisites for invoking the exception are that the prosecution demonstrated: (1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct, (2) that the leads making discovery inevitable were possessed by the police at the time of the misconduct, and (3) that the police also prior to the misconduct were actively pursuing the alternate line of investigation. *United States v. Webb,* 796 F.2d 60, 62 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 894, 93 L.Ed.2d 846 (1987); *United States v. Cherry,* 759 F.2d at 1204. The testimony of Russell Bowers and Brenda Scarbrough indicate that the F.B.I. had already obtained a copy of the U-Haul contract bearing Hill's signature on July 16, or July 17, 1979. The search itself was not conducted until July 19, 1979. As Brenda Scarbrough testified, she had obtained and initialed a photocopy of the original contract on July 16, 1979. (Tr. 888). Russell Bowers testified that he turned over the penholder bearing the Maryland license plate of the U-Haul truck to the F.B.I. and that this exhibit had been initialed by Special Agent Robert Shanks on July 17, 1979. (Tr. 695–96). For these reasons, the court is of the opinion that the prerequisites for invoking the inevitable discovery exception properly exist. Accordingly, any error committed by Hill's trial attorneys in not seeking to exclude the U-Haul contract found in Hill's truck could not have prejudiced Hill and therefore, any ineffective assistance of counsel claim for such error must fail.

Therefore, the court concludes that this contention is also without merit.

### The State's Alleged Improper Use of Peremptory Challenges on the Basis of Race

Hill contends that the state exercised its peremptory challenges to exclude all of the black individuals that were in Hill's jury pool. Hill states that the pool was approximately one-third black and that the state struck Odell Carter, a black man who was allegedly the third potential juror; James Dennis, a black man, who was allegedly the seventh potential juror; Maurice Tate, a black man, who was allegedly the eleventh potential juror; and C.G. Hughey, a black man, who was allegedly the thirty-fifth potential juror. Hill contends that he should be afforded a hearing to establish whether these challenges by the state were racially motivated.

Until recently, the United States Supreme Court, in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), had ruled that evidence that the government had used as peremptory challenges to remove all of the black prospective jurors from a panel in a single instance or case would not violate the Equal Protection Clause on the basis of racial discrimination. *United States v. Childress,* 715 F.2d 1313, 1315 (8th Cir.1983) (citing *Swain,* 380 U.S. at 222), *cert. denied,* 464 U.S. 1063, 104 S.Ct. 744, 79 L.Ed.2d 202 (1984). However, the United States Supreme Court last year rejected this holding in *Swain* and held that the Equal Protection Clause proscribes a prosecutor from peremptorily challenging potential jurors solely on account of their race and that a defendant may establish a prima facie case of purposeful racial discrimination in the selection of his jury without proof of repeated striking of potential black jurors over a number of cases. *Batson v. Kentucky,* 476 U.S. 79, ——, 106 S.Ct. 1712, 1722, 90 L.Ed.2d 69, 87 (1986). Therefore, Hill is entitled to relief on the basis of this

claim if it would not be improper for this court to apply the holding in *Batson* retroactively. This question was answered by the United States Supreme Court in *Allen v. Hardy*, 478 U.S. ——, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986). Therein, the Supreme Court held that the ruling in *Batson* was not to be applied retroactively to a case on federal habeas review. 478 U.S. ——, 106 S.Ct. at 2880, 92 L.Ed.2d at 204. Accordingly, even if Hill has made out a prima facie case under the *Batson* decision, he would not be entitled to relief with regard to this assignment of error.

### The State's Alleged Improper Exclusion of a Prospective Juror

■ Prospective juror David Rutledge was discharged for cause at the state's request, over the objections of the defendant, after Rutledge stated that he could impose the death penalty in some cases but that he could not do so in Hill's case. The court is of the opinion that the exclusion of the juror was proper. The standard to be applied in this instance is whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841, 851–53 (1985). The Mississippi Supreme Court, considering this alleged error, held that the trial judge committed no error in excusing the juror for cause. *Hill v. State*, 432 So.2d 427, 437 (Miss.1983). Such a finding is subject to a presumption of correctness under 28 U.S.C. § 2254(d); *see also Wainwright v. Witt*, 469 U.S. at 426–429, 105 S.Ct. at 853–54. This is not a case where the prospective juror stated that the possible imposition of the death penalty would or might affect his deliberations. *See Adams v. Texas*, 448 U.S. 38, 50, n. 7, 100 S.Ct. 2521, 2528 n. 7, 65 L.Ed.2d 581 (1980) (jurors improperly excluded who only stated that possible imposition of death penalty would or might affect their deliberations since such an effect did not demonstrate that prospective jurors were unwilling or unable to follow law or obey oaths). In the present case, the prospective juror expressly stated that he could not impose or consider the death penalty in Hill's case, and in response to the question of the assistant district attorney as to whether he would find it impossible for him to follow the law, Williams replied "Correct." (Tr. at 597). In response to a question from one of Hill's attorneys as to whether Rutledge was so opposed to the death penalty that he could not in any case follow the instructions of the court, Rutledge replied, "Not in this case, no." (Tr. at 615). Given the responses by Rutledge and the holding in *Wainwright v. Witt*, the court is of the opinion that Rutledge's exclusion was required.

### The State's Alleged Violation of the Discovery Rules

■ In Hill's trial, the state introduced a penholder on which witness Russell Bowers had written down the license plate number of a U-Haul truck he observed backed up to an American Freight Lines truck which was later determined to have been driven by Robert Lee Watkins prior to his death. At trial, Hill's attorney objected to the introduction of the penholder on the basis that it had not been provided to the defense prior to the trial even though the defense had requested to examine all items that the state intended to use as evidence in chief at the trial pursuant to Rule 4.06 of the Mississippi Uniform Criminal Rules of Circuit Court practice. The defendant asserts that the failure to honor Hill's request for this evidence violated his right to due process of law and his right to a fair trial. With respect to such an allegation, the proper inquiry is to determine "whether there has been a constitutional infraction of defendant's due process rights which would render the trial as a whole 'fundamentally unfair.'" *Manning v. Warden, Louisiana State Penitentiary*, 786 F.2d 710, 711–12 (5th Cir.1986). The court determines that the admission of the penholder under the circumstances alleged by Hill does not render the trial as a whole "fundamentally unfair." This is particularly true since Hill's attorney only objected to the admission of the penholder on the basis of alleged non-discovery. Hill's attorneys failed to secure an order enforcing the

Rule 4.06 demand and failed to preserve their objection on this point for appeal purposes. For these reasons, the court rules that Hill is not entitled to any habeas relief on this contention.

### The Alleged Arbitrary and Discriminatory Aspects of the Death Penalty in Mississippi

The defendant argues that other Mississippi cases more aggravated than his have resulted in a lesser punishment than death and that such arbitrary and capricious application of the death sentence violates his Eighth and Fourteenth Amendment Rights. Hill further argues that there has been an historical pattern of discriminatory imposition of the death penalty against members of the black race, particularly poor, black males. In support of his argument that the death penalty in Mississippi is applied discriminatorily, Hill argues that in 1976, 16 of the 19 men on death row in Mississippi were black. He states that as of June 20, 1979, there were nine black and four whites on death row in Mississippi; that as of June 30, 1980, there were seven blacks and four whites on death row in this state; twelve blacks and five whites on death row in Mississippi as of June 20, 1981; twenty blacks and ten whites as of June 20, 1982; and twenty blacks and fifteen whites as of June 20, 1983. Hill further states that approximately 68% of the death sentences affirmed by the Mississippi Supreme Court since 1976 have been cases involving black defendants.

Hill's argument concerning a violation of the Equal Protection Clause of the Fourteenth Amendment fails in light of the fact that Hill has offered no evidence specific to his own case that will support an inference that racial considerations played a part in his sentence. *See McCleskey v. Kemp,* — U.S. —, 107 S.Ct. 1756, 1765–69, 95 L.Ed.2d 262 (1987). Hill's Eighth Amendment claim is also without merit since he only proffers statistical evidence of a disparate impact but no convincing evidence of intentional discrimination in his case. *See Adams v. Wainwright,* 709 F.2d 1443, 1449 (11th Cir.1983) (only if evidence of disparate impact is so strong that the only permissible inference is one of intentional discrimination will it alone suffice), *cert. denied,* 464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984). The defendant's evidence does not meet this standard. The Fifth Circuit has repeatedly held that such evidence is inadequate to show that a petitioner has been the victim of discrimination. *See Wilson v. Butler,* 813 F.2d 664, 674 (5th Cir.1987); *Evans v. Thigpen,* 809 F.2d at 244; *Moore v. Blackburn,* 806 F.2d 560, 565 (5th Cir.1986); *cert. denied,* — U.S. —, 107 S.Ct. 1988, 95 L.Ed.2d 827 (1987); *Wicker v. McCotter,* 798 F.2d 155, 157 (5th Cir.1986); and *Berry v. Phelps,* 795 F.2d 504, 506 (5th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987). Hill further argues that he is entitled to an evidentiary hearing. In *Prejean v. Maggio,* 765 F.2d 482 (5th Cir.1985), the Fifth Circuit stated:

> To create a fact issue warranting an evidentiary hearing, a statistical proffer must be "so strong that the results will permit no other inference but that they are the product of racially discriminatory intent or purpose." *Smith v. Balkcom,* 671 F.2d 858, 859, modifying 660 F.2d 573 (5th Cir.), *cert. denied,* 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982). *Prejean's* tender does not meet this standard.
>
> *Smith v. Balkcom, id.,* and *Spinkellink v. Wainwright,* 578 F.2d 582 (5th Cir. 1978), remain the touchstone of our analysis. In both *Smith* and *Spinkellink,* we said the proof must establish specific acts evidencing intentional or purposeful discrimination *"against the petitioner"* on the basis of race. *Id.* at 614 n. 40, *quoted in Smith,* 660 F.2d at 585 (emphasis supplied in *Smith* ).

765 F.2d at 486. Hill has not set forth sufficient proof under this standard. Hill further suggests that he is entitled to appointed experts to assist him in the presentation of his statistical evidence. However, since Hill is not entitled to a hearing, he therefore is not entitled to any appointed experts to assist him at such a hearing. *Adams v. Wainwright,* 709 F.2d 1443, 1450 (11th Cir.1983).

Petitioner's Claim That the Lack of the Alternative for Sentencing to Life Without Parole Violates His Eighth Amendment and Equal Protection Rights

Hill argues that the capital murder statute in Mississippi, Mississippi Code Annotated Section 97–3–19 (1972) is unconstitutional in that it does not allow a jury to sentence a defendant to life imprisonment without parole. Accordingly, Hill argues that the only way the jury could insure that he would not be released at a later time was by ordering his execution.

■■■ A similar argument was made in *Johnson v. Thigpen*, 623 F.Supp. 1121 (S.D.Miss.1985), *affirmed*, 806 F.2d 1243 (5th Cir.1986). There, the petitioner sought the giving of an instruction that, in effect, requested the jury to disregard the possibility of pardon, parole or clemency if it opted for life imprisonment rather than death. The court in *Johnson* held that while such instructions "may be permissible under the Constitution, they are not mandated by the Constitution." (citing *California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983) and *O'Bryan v. Estelle*, 714 F.2d 365, 388–89 (5th Cir.1983), *cert. denied, sub nom. O'Bryan v. McKaskle*, 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984)). Therefore, this court likewise holds that Hill's claim presents no ground for federal habeas relief.

The Alleged Error in Admitting Evidence of the Escape of Petitioner from Jail

Hill escaped from the Tunica County Jail in August 1979 prior to his charge for the DeSoto County murder. Hill returned voluntarily to the jail three days later. Testimony regarding the escape was elicited, and admitted, at Hill's trial.

Initially, the court rules that this matter is not a proper subject for federal habeas review insofar as the petitioner has alleged no deprivation of federal rights because of the admission of this evidence and since he cites only propositions of state law in support of his contention. As held in *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783, 795 (1982), a state

prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held "in custody in violation of the Constitution or laws or treaties of the United States." 456 U.S. at 119. However, even assuming that petitioner had alleged the violation of a federal or constitutional right, the Fifth Circuit has held that it is "universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus guilt itself." *United States v. Ballard*, 423 F.2d 127, 133 (5th Cir.1970) (citing Wigmore, *Evidence*, § 276 (3d.ed. 1940)).

The Alleged Error With Regard to the Exhibition to the Jury of Inflamatory Photographs of the Victim's Decomposed Body

Several photographs of the decomposed remains of Robert Lee Watkins were introduced at Hill's trial over the objections of Hill's attorneys at both the guilt-innocent phase and sentencing phase of the trial. On direct appeal to the Mississippi Supreme Court, the majority stated:

> The admission of photographs of the remains of Watkins was within the discretion of the circuit judge, in having probative value, no error was committed in offering them into evidence.

*Hill v. State*, 432 So.2d 427, 438 (Miss. 1983). The state argues that the photographs did have substantive probative value as to the cause of death since the pathologist at trial testified that the bullet which caused the fatal wound entered from the back of Watkins' head and exited from the front of his head, as the photographs clearly show.

■■■ The court is likewise of the opinion that the introduction of the photographs was within the discretion of the trial judge and that any constitutional error in admitting them was harmless.

The Alleged Improper Instruction to the Jury to Consider the "Committed for Pecuniary Gain" Aggravating Circumstance

■■■ The trial court instructed the jury at the sentencing phase that it should con-

sider as an aggravating circumstance that the capital offense was committed for pecuniary gain under Miss.Code Ann. § 99–19–101 since the capital offense was committed during Hill's commission of a robbery as set forth in § 99–19–101(5)(d). Hill argues that since the jury had already been instructed to separately consider the robbery as an aggravating circumstance, that instructing the jury to consider the same set of facts twice as two separate aggravating circumstances violated his Eighth and Fourteenth Amendment rights.

The jury herein found four aggravating circumstances to exist. These were:

(1) The capital offense was committed while the defendant was engaged in the commission of robbery;

(2) The capital offense was committed for pecuniary gain;

(3) The defendant was previously convicted of a felony involving the use or threat of violence to the person; and

(4) The capital offense was especially heinous, atrocious or cruel. (Tr. 1197).

The court in *Edwards v. Thigpen*, 595 F.Supp. 1271 (S.D.Miss.1984) faced a similar contention after the jury in that case had found six aggravating circumstances to exist, with two of the aggravating circumstances being that the capital murder was committed while the defendant was engaged in the commission of a robbery and the capital murder was committed for pecuniary gain. *Id.* at 1286. The court stated as follows:

It strains the imagination that the elimination of one of the aggravating circumstances would have made any difference to this jury. Nevertheless, the fact that the statute allows the finding of two statutory aggravating circumstances based on a single set of facts presented by this case does no violence to requirements of the Eighth Amendment. The procedures used by the trial court in instructing the jury as to aggravating and mitigating circumstances comported with the constitutional requirements of imposing the death sentence. See generally *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). The

aggravating circumstances found in this case genuinely operated to narrow the class of persons eligible for the death penalty and reasonably justified its imposition. This is certainly not the case where the jury was unguided and the imposition of the death penalty could be called wanton or freakish.

*Id.* For these reasons, the court concludes that this claim must fail.

The Alleged Improper Instruction to the Jury to Consider the "Especially Heinous, Atrocious, or Cruel" Aggravating Circumstance

With respect to this claim, Hill argues that the trial court violated his due process rights and his right to reliable sentencing determination by submitting to the jury instructions to consider the "especially heinous, atrocious, or cruel" aggravating circumstance in that the statutory provision, on its face and as applied in his case, violated his Eighth and Fourteenth Amendment rights and that there was insufficient evidence to support this instruction. Hill's first claim fails in light of *Johnson v. Thigpen*, 623 F.Supp. 1121 (S.D.Miss.1985), *aff'd*, 806 F.2d 1243 (5th Cir.1986). As the court there stated:

[U]nder *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), the construction of an aggravating circumstance may not be so broad that it encompasses an impermissibly large group of murderers so that it may be said that the sentence was the result of the standardless discretion of a basically uninstructed jury.

As given a limited judicial construction by the Mississippi Supreme Court, the terms "especially heinous, atrocious, or cruel" are not so vague and overbroad on their face as to violate the Eighth and Fourteenth Amendments under *Godfrey* and *Gray* [*v. Lucas*, 677 F.2d 1086] standards. The Mississippi Supreme Court continues to define such aggravating circumstances as those which are "accompanied by such additional facts as to set the crime apart from the normal capital felonies—*the conscienceless or pitiless*

**334**

*crime which is unnecessarily tortuous to the victim, Billiot v. State,* 454 So.2d 445, 464 (Miss.1984), *quoting Coleman v. State,* 378 So.2d 640, 648 (Miss.1979). *See also Jordan v. State,* 464 So.2d 475, 478 (Miss.1985); *Spinkellink v. Wainwright,* 578 F.2d 582 (5th Cir.1978). 623 F.Supp. at 1137. In affirming the district court, the Fifth Circuit noted that the Mississippi Supreme Court has not consistently applied its limiting construction of the especially heinous aggravating circumstance. 806 F.2d at 1246. However, the Fifth Circuit still found that the broad interpretation given the especially heinous aggravating circumstance by the Mississippi Supreme Court decisions not to be unconstitutional. *Id.* at 1249. For these reasons, this claim must also fail.

Furthermore, with respect to Hill's claim that the "heinous, atrocious, or cruel" instruction was not supported by the evidence, the court notes that the Mississippi Supreme Court found that "the evidence overwhelmingly supports the jury's finding of statutory aggravating circumstances ... and that the capital offense was especially heinous, atrocious, or cruel." *Hill v. State,* 432 So.2d at 443. This factual finding by the Mississippi Supreme Court is entitled to a presumption of correctness unless one of the eight enumerated grounds stated in 28 U.S.C. § 2254 is established. *Wicker v. McCotter,* 798 F.2d at 158–59 (5th Cir. 1986). None of the grounds have been established. Further, the court herein concludes, after a review of the record, that the instruction was warranted by the evidence. Therefore, all of Hill's claims with respect to the "heinous, atrocious, or cruel" instruction accordingly fail.

### Alleged Lack of Prior Notice of Aggravating Circumstances

The petitioner alleges that he was not given notice as to those aggravating circumstances the state would rely on in seeking the death penalty against him in violation of his Eighth and Fourteenth Amendment rights. This identical claim was considered on the merits in *Johnson v. Thigpen,* 623 F.Supp. at 1136. In *Johnson,* the court dismissed the claim stating that Miss.

Code Ann. § 99–19–101(5) explicitly sets forth and limits those aggravating circumstances upon which the state may rely. The Fifth Circuit ruled likewise in *Spinkellink v. Wainwright,* 578 F.2d 582, 609–10 (5th Cir.1978) (Florida statute defined aggravating circumstances that could be considered by a judge and jury), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979).

### The Trial Court's Alleged Failure to Instruct the Jury on Petitioner's Diminished Capacity

Hill claims that the jury should have been granted an instruction notifying the jury that he sustained head injuries prior to the murder of Robert Lee Watkins and that he only has an IQ of 70. Hill further states that his attorneys never requested such an instruction because of inadvertence and that they will so testify, if given the opportunity. The Mississippi Supreme Court, in responding to this claim, conceded that a guidance counselor from Hill's high school testified that Hill was a slow learner, scored low on achievement tests and only had an IQ of approximately 70. The Court further noted that after Hill's head injury in 1972, he returned to school, graduated, excelled in carpentry and received a college football scholarship. *In re Hill,* 460 So.2d at 799. The Court found, after considering this evidence, that there was "nothing presented which would have warranted an instruction on Hill's capacity to 'appreciate the criminality of his conduct' as required by [Miss.Code Ann. § 99–19–101(6)(f)] at the time the murder took place. There is no merit to this assignment of error." *Id.* To the extent that this can be considered a factual finding, it is again entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254. Even ignoring such a presumption, this court, upon examining the record, likewise finds that the instruction was not warranted by the evidence. It was therefore properly refused. *See Glover v. Daniels,* 310 F.Supp. 750, 759 (N.D.Miss.1970) (law is clear in Mississippi and elsewhere that an instruction which is not warranted by evidence is defective); *Alley v. Praschak Mach. Co.,* 366 So.2d 661, 665 (Miss.1979) (party has

right to have his theory of case presented to jury by instructions if evidence to support it). For these reasons, Hill cannot prevail on this claim.

### The Trial Court's Refusal to Order An Additional Psychological Examination of Hill

Hill claims that he was only afforded a fifteen minute conversation with personnel at the Mississippi State Hospital. He states that, during this period of time, no tests or examinations were conducted and that, on this limited basis, one of the persons who spoke to Hill stated that Hill was responsible for those actions which he had taken and was competent to stand trial. Hill's attorneys, believing that the psychological examination afforded Hill was inadequate, requested that the petitioner be given a complete psychological examination at the state's expense since neither Hill nor his attorneys could otherwise afford it. Hill claims that four days prior to the beginning of his trial, William McCord, a psychologist, consented to administering Hill an MMPI examination without remuneration. Hill asserts that the results of the exam showed that he was experiencing severe emotional problems, rendering him prone to make impulsive decisions and that he was also paranoid and schizophrenic. However, he claims that since his trial was already under way at the time the results of this exam were obtained, his counsel was not afforded an adequate time to make an insanity defense. Hill therefore claims a violation of his rights to due process of law, equal protection and effective assistance of counsel.

As pointed out by the Mississippi Supreme Court when it considered this claim, *Hill v. State*, 432 So.2d 427, 437 (Miss.1983), the motion presented to the trial court requesting a psychological examination for Hill, stated that the purpose of the motion was to determine whether or not Hill was mentally incompetent and unable to assist and prepare his counsel for trial, not whether or not he lacked the mental capacity to form a criminal intent, or that he was insane. Further, the Court noted that the psychologist who adminis-

tered the MMPI test to Hill was not called by Hill's attorneys in either the guilt or sentencing phases of the trial. *Id.* at 437. The Mississippi Supreme Court found that "if there is one thing clear from this record, Hill was competent to stand trial. Or, put another way, if he were mentally incompetent to answer questions and to fully assist his counsel, it would take an extraordinarily skilled psychiatrist to detect it." *Id.* This finding by the Mississippi Supreme Court that the trial court did not abuse its discretion cannot be lightly disregarded. *Sonnier v. Maggio*, 720 F.2d 401, 411 (5th Cir.1983), (*cert. denied*, 465 U.S. 1051, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984); (citing *Maggio v. Fulford*, 462 U.S. 111, 103 S.Ct. 2261, 2265, 76 L.Ed.2d 794 (1983)) (court may not disregard state court finding of competency unless conclusions not fairly supported by record). In *Sonnier*, the Fifth Circuit acknowledged that although the state must provide psychiatric experts to indigent defendants in certain circumstances, a mere request by the defendant for such assistance does not require a trial court to appoint an expert unless the defendant's sanity, at the time of the offense, is "seriously in issue" or if "reasonable ground to doubt" sanity exists. *Id.* at 410 (citing *Pedrero v. Wainwright*, 590 F.2d 1383, 1391 (5th Cir.1979), *cert. denied*, 444 U.S. 943, 100 S.Ct. 299, 62 L.Ed.2d 310 (1979)). In this case, as in *Sonnier*, the state court did not flatly refuse to provide any psychiatric assistance to the petitioner. Rather, in both cases, an initial examination of the petitioner was undertaken and findings made unfavorable to the petitioner's proposed defenses of incompetency or insanity. 720 F.2d at 410. For this reason, this court concludes, as did the Fifth Circuit in *Sonnier*, that since the examination of Hill at the Mississippi State Hospital did not place Hill's competency at the time of the offense, "seriously in issue", then it cannot be said that a "reasonable ground to doubt" Hill's competency existed.

More recently, in *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the United States Supreme Court stated:

The risk of error from denial of [psychiatric] assistance, as well as its probable value, are most predictably at their height when the defendant's mental condition is seriously in question. When the defendant is able to make an ex parte threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is rarely apparent. It is in such cases that a defense may be devastated by the absence of a psychiatric examination and testimony. . . .

470 U.S. at 82–83, 105 S.Ct. at 1097, 84 L.Ed.2d at 65–66. The Court went on to hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to "be a significant factor at trial", the state must assure the defendant access to a competent psychiatrist. 470 U.S. at 83, 105 S.Ct. at 1097, 84 L.Ed.2d at 66. As the Mississippi Supreme Court found, Hill did not demonstrate to the trial judge that his sanity or competency at the time of the offense would be a "significant factor" at trial. 432 So.2d at 437; *see also In re Hill*, 460 So.2d at 799 (no evidence presented which would have warranted an instruction on petitioner's capacity to appreciate criminality of his conduct at time murder took place). For these reasons, the court concludes that Hill is not entitled to any habeas relief with respect to this claim.

### The Alleged Insufficiency of the Legally Admissible Evidence

Hill argues that once the murder weapon and the U-Haul contract are excluded for what he alleges to be their inadmissibility, then the only remaining evidence to corroborate Gregory Tucker's inculpatory testimony is the carburetor that was found inside Hill's home. Hill further argues that since several of the putative eye witnesses failed to identify Hill in court, the carburetor by itself is not sufficient to convict Hill of capital murder. Addressing this claim, the Mississippi Supreme Court noted that Hill's argument presumes that Hill had prevailed at excluding both the U-Haul contract and the murder weapon. *In re Hill*, 467 So.2d 669, 671 (Miss.1985).

The Court further stated that since it had determined that there was no new evidence to support the exclusion of the weapon or the U-Haul contract, then Hill's premise for his contention had been defeated. *Id.* Since this court has also concluded that exclusion of the murder weapon and U-Haul contract were not warranted at trial, then this court is of the opinion that this claim is without merit.

### The Alleged Prejudicial Pretrial and Trial Publicity

Hill states that both before and during his trial, there was extensive media coverage of the DeSoto hijacking and killing. Also, Hill states that during his trial, a brutal murder was committed in nearby Memphis and that the media covered that crime along with the coverage of Hill's trial. Hill's attorneys requested the court to allow them to question the jurors after the rendition of their verdict concerning the Memphis murder in order to tell whether any of the jurors had been influenced by that extraneous crime in reaching their verdict with regard to the petitioner. The court denied this request. In its brief, the state contends that this matter was neither raised at trial nor on direct appeal and that its consideration by this court is barred. The Mississippi Supreme Court, considering this claim, also found that consideration of the issue was barred since Hill's attorneys failed to request a change of venue at trial and also failed to raise this issue on direct appeal. *In re Hill*, 460 So.2d at 800. According to this court's rulings, the failure of Hill's attorneys to raise the matter on direct appeal to the Supreme Court and the failure of his attorneys to object to this matter at trial do not bar this court from consideration of the issue since the Mississippi Supreme Court, in death penalty cases prior to the time of Hill's conviction and direct appeal, had not consistently applied either procedural bar.

With regard to the alleged prejudicial pretrial publicity, the petitioner bears the burden of showing that community prejudice actually invaded the jury box infecting the opinions of the prospective jurors. *United States v. Williams*, 523 F.2d 1203,

1208 (5th Cir.1975). Hill has proffered no evidence to support any allegation that the publicity before trial was highly inflammatory or so poisoned the proceedings that it was impossible for Hill to have received a fair trial by an impartial jury. In fact, the prospective jurors were questioned whether they had read, been told, heard, or otherwise knew the purported facts of the case. (Tr. 507). Although prospective jurors Riley, Moore, Crane, Trusty, Huffman, Roarh, Jordan, Hale, Bunch and Thomas admitted to having heard or read something about Hill's case. All of the prospective jurors stated that they could lay aside what they had read, listen to the evidence, and reach their decision based on the evidence presented at trial. The only exception was prospective juror Carol Crane who admitted that she would "be a little bit influenced" by what she had learned of the case. (Tr. 513). However, Crane was not selected to serve on the jury.

■ As to the alleged prejudicial publicity that occurred during Hill's trial, the court can discern no possible way that Hill might have been prejudiced thereby. After the jury had been selected and before any of the evidence had been presented, the trial court instructed the jury that they would have to be sequestered, that they should not discuss any of the evidence until all of the evidence had been presented, and that "newspaper, television coverage, and, obviously, no personal interviews are permitted". (Tr. 629). Accordingly, the court finds no merit to this contention.

### The Prosecutor's Alleged Pattern of Misconduct

Hill claims that the prosecuting attorney's alleged repeated acts of misbehavior and misconduct during the guilt and sentencing trials violated his Fourteenth Amendment right to due process and his Eighth and Fourteenth Amendment rights to a capital sentence imposed in a rational and objective manner free of passion. In support of this allegation, the petitioner cites three specific instances of alleged improper prosecutory misconduct.

First, Hill claims that the testimony of the victim's widow concerning her children's names and ages, and whether they were close to their deceased father before his death were highly prejudicial and should not have been admitted. However, Hill concedes that his attorneys failed to object to any of the questions elicited by this testimony.

Secondly, FBI Special Agent Shanks induced Hill to believe that Sammy Hampton had inculpated Hill in the DeSoto County crime. After Shanks had informed Hill of the purported statements of Hampton, Hill stated, "Sammy will get his." At trial, the state elicited from Special Agent Shanks, Hill's response. Hill claims that this testimony was prejudicial since it implied that Hampton truly had inculpated Hill in the DeSoto County crimes, even though Hampton had not; that the testimony falsely implied that Hill would commit a future crime or act of violence; that, if Hill were placed on the stand to explain his response, he would be forced to convey to the jury that he was in jail at the time for another hijacking. Hill further contends that Shanks' testimony put before the jury evidence of another crime committed by Hill since Hill was not under arrest for the DeSoto hijacking at the time and that, therefore, the jury was implicitly informed that Hill was in custody for some other crime. Finally, Hill cited a number of instances where the prosecutor stated during closing argument that Hill's crime was "one of the most brutal homicides I have ever seen" (Tr. 1181), that the death penalty serves to deter or thwart crime, and that Hill's crime "demands the death penalty." (Tr. 1194).

■ Our review of these allegations of misconduct is limited to the narrow issue of whether the prosecutor's acts were so prejudicial as to render the trial fundamentally unfair in violation of the due process clause. *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Hance v. Zant*, 696 F.2d 940, 950 (11th Cir.1983), *cert. denied*, 463 U.S. 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983). This type of conduct must be distinguished

from conduct which is merely improper and universally condemned. *Easter v. Estelle*, 609 F.2d 756, 760 (5th Cir.1980). From a review of the record, the court concludes that the prosecutor's acts did not render the trial fundamentally unfair. For example, the prosecutor's remarks were not evidence presented at trial but rather were statements made during closing arguments. Prior to the opening arguments, the court told the jury that "I'll caution you at this time that what the attorneys say in the trial of the case is not evidence and should not be considered as evidence by you. It is intended to aid and assist you to understand the evidence as it is presented. So, keep that in mind throughout the trial. The attorneys understand that what they say is not evidence, and if they say anything that conflicts with what a witness says, then, of course, the evidence comes from the witness. I want you to understand that." (Tr. 633).

As stated in *U.S. v. Livingston*, 816 F.2d 184 (5th Cir.1987), a conviction wherein prosecutorial misconduct occurred should only be reversed if "substantial rights" of the accused are affected. *Id.* at 195 (citing Fed.R.Crim.P. 52). Further, where a defendant does not object to an allegedly improper argument, reversal is mandated only in cases of "plain error", or where the argument "seriously affects the fairness, integrity, or public reputation of judicial proceedings and results in a miscarriage of justice." 816 F.2d at 195. As held in *Livingston*, an instruction to the jurors that the statements of the attorneys were merely argument and not evidence, cures any prejudice created by a prosecutor's statement or remarks. *Id.* at 196.

Hill's attorneys also failed to object to the alleged improper testimony of the victim's widow [4] or to object on the grounds of undue prejudice to Hill's statement that "Sammy will get his." The court cannot

conclude that the omission of this testimony "seriously affect[ed]" the fairness of Hill's trial, particularly in light of the strength of the admissible evidence of guilt against Hill. *See United States v. Rhoden*, 453 F.2d 598, 600 (5th Cir.1972) (pertinent factors to consider in weighing degree to which alleged improper argument may have affected substantial rights of defendant, include magnitude of prejudicial effect of statements, efficacy of any cautionary instructions and strength of evidence of defendant's guilt), *cert. denied*, 406 U.S. 947, 92 S.Ct. 2050, 32 L.Ed.2d 334 (1972). The finding of the U–Haul contract showing that Hill had rented the U–Haul truck that Russell Bowers observed parked beside the Allied freight truck, the finding of the carburetor that had been transported in the Allied freight truck in Hill's home and Hill's directing the police to the murder weapon that tests showed were used in the killing of Robert Lee Watkins, strongly point to the guilt of Alvin Hill in Watkins' murder. For these reasons, the court concludes that Hill is not entitled to any relief on these claims.

### The Alleged Error of the Trial Court's Refusal to Grant an Instruction on Lesser Included Offenses

 Petitioner argues that the trial court erred in its refusal of the defendant's requested instructions on the lesser included offenses of murder and manslaughter. The Fifth Circuit, in *Reddix v. Thigpen*, 805 F.2d 506 (5th Cir.1986), faced a similar allegation. In *Reddix*, the Fifth Circuit noted that, as a federal court in a habeas matter, it could "intervene only to correct wrongs of constitutional dimension" and that it did not have authority to "review all misapplications of state criminal law". 805 F.2d at 511. In *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), the U.S. Supreme Court held, in essence, that a state cannot ban the giving of lesser included offense instructions in a capital

---

**4.** The court has familiarized itself with the recent U.S. Supreme Court decision of *Booth v. Maryland*, —— U.S. ——, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) wherein the court ruled that testimony or statements describing the impact on the victim's family in the sentencing phase of a capital murder case violates the Eighth

Amendment. In the case at bar, however, the victim's widow did not relate how the victim's death had affected his family but only that he had two children and that they had been close to their father. (Tr. 1004–10). In the court's opinion, these statements do not rise to the level of prejudice exhibited in the *Booth* case.

case but that a lesser included offense instruction must be given only when "supported by the evidence." 447 U.S. at 637 n. 12, 100 S.Ct. 2389 n. 12. As the Fifth Circuit stated in *Reddix*, "the federal standard, which clearly satisfies due process, 'is that a lesser included offense instruction should be given if the evidence would permit a jury rationally to find [a defendant] guilty of a lesser offense and acquit him of the greater.'" 805 F.2d at 512 (citing *Hopper, supra*, 447 U.S. at 612, 100 S.Ct. at 2376). Therefore, any evaluation of whether a lesser included offense instruction should have been given necessarily requires an analysis of Mississippi statutory law with regard to Mississippi's definitions of capital murder, murder and manslaughter. In accordance with *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), an application of state law cannot serve as a basis for a federal habeas relief. As the Fifth Circuit stated in *Easter v. Estelle*, 609 F.2d 756 (5th Cir.1980), "a state trial court judge's failure to instruct on a lesser included offense is not a federal constitutional matter." *Id.* at 758. For this reason, federal habeas relief is not available to Hill on this claim.

### The Alleged Ineffective Assistance of Counsel

Hill claims ineffective assistance of counsel at trial with regard to the murder of Robert Lee Watkins; ineffective assistance of counsel with regard to the Tunica County hijacking case; and ineffective assistance of counsel on appeal. For various reasons, the court concludes that each of the grounds for ineffective assistance of counsel are without merit and that relief to Hill is not warranted.

As to Hill's claim of ineffective assistance of counsel at trial, he particularly noted eight different instances to support his claim. These are:

(1) that counsel failed to subpoena Sammy Hampton so as to interview Hampton and call him at the suppression hearing regarding the admissibility of the murder weapon and that counsel should have also cross-examined Sheriff Monteith and Investigator Ward so as to ascertain the source of Monteith's information that Robert Carter of Memphis possessed the weapon;

(2) that Hill's trial attorneys did not recognize the error committed wherein Hill's accomplice in the DeSoto County crime, Gregory Tucker, was improperly questioned about his conviction for manslaughter;

(3) that Hill's attorneys failed to recognize that the "last word" argument made by the prosecutor constituted error;

(4) that Hill's trial attorneys should have known that Hill's pick-up truck was searched before Hill had actually given consent to do so and that, accordingly, they should have moved to exclude any evidence seized as a result of the search;

(5) that his attorneys failed to obtain a judicial order enforcing their discovery demands pursuant to Rule 4.06 of the Uniform Criminal Rules of Circuit Court practice;

(6) that petitioner's trial attorneys failed to permit the state from eliciting prejudicial testimony regarding the victim's family, failed to object to such testimony and further failed to request curative instructions with regard to this testimony;

(7) that Hill's trial attorneys failed to object to alleged numerous instances of prosecutorial misconduct; and

(8) that Hill's trial attorneys failed to request a jury instruction regarding Hill's alleged diminished mental capacity. The court will briefly address each of these stated grounds Hill has cited in support of his claim for ineffective assistance of counsel.

The test for ineffective assistance of counsel claims has been stated as follows:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of the conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.

Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable....

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). With regard to such a claim, the claimant carries the burden of proof and must overcome a "strong presumption" that the conduct of claimant's trial attorneys falls within the range of reasonable professional assistance. *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir.1985). Having set forth the standard to be applied, the court proceeds to address those deficiencies specified by Hill in support of his claim of ineffective assistance of counsel at trial.

▬ The first alleged deficiency of counsel at trial essentially states that Hill's trial attorneys should have called Sammy Hampton or further cross-examined Sheriff Monteith so as to fully put forth before the trial court testimony as to how Sheriff Monteith obtained the information that Robert Carter had the murder weapon in his possession. To meet his burden on this claim, Hill must show that those witnesses that his trial counsel failed to interview or sufficiently examine would have testified favorably to his case. *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir.1985). While Hill has produced the affidavit of Hampton to the effect that Hampton could not have informed Sheriff Monteith of the true whereabouts of the weapon since Hampton did not possess such knowledge, Hill has failed to demonstrate that Sheriff Monteith would testify favorably in his behalf. Hill asserts that Sheriff Monteith "is now willing to testify that ... he has no recollection of how the murder weapon was found...." (petitioner's brief at pp. 17–18). This assertion, however, taken alone is insufficient. A similar claim was asserted in *Ross v. Estelle,* 694 F.2d 1008 (5th Cir.1983). In that case, the court stated:

Second, Ross claims that his trial lawyer rendered ineffective assistance because he failed to investigate and interview key witnesses. One such key witness was

Ross' wife who he alleges would have placed him at another place when the aggravated robbery attempt occurred. We would be more than slightly perplexed by counsel's failure to check out this alibi if it were shown that this was probative. This testimony, of course, would not have been merely cumulative and its absence clearly prejudicial to the defendant. *See Barnard v. Henderson,* 514 F.2d 744 (5th Cir.1975). We point out, however, that there is no basis existing anywhere in the record—save Ross' statement in his *pro se* brief—which supports his assertion as to what his wife would have testified to. Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court) unsupported and unsupportable by anything else contained in the record, to be of probationary, evidentiary value. (citations omitted). We are thus bound to re-emphasize that mere conclusory allegations do not raise a constitutional issue in a habeas proceeding. (citation omitted).

694 F.2d at 1011–12. The court is of the opinion that, even in light of those statements made by Sammy Hampton in his affidavit, the source of Monteith's information could not be substantiated by the testimony of anyone except Monteith himself.

Furthermore, Anderson and Suggs do not state in their affidavits that their failure to cross-examine Monteith more extensively or to interview Hampton were omissions on their part. Therefore, it would be mere speculation on this court's part as to whether these failures were trial strategy or not. Addressing a failure to investigate claim in *Edwards v. Thigpen,* 595 F.Supp. 1271 (S.D.Miss.1984), the district court, quoting *Strickland v. Washington,* stated:

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.... And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's fail-

ure to pursue those investigations may not later be challenged as unreasonable. 595 F.Supp. at 1289.

Since the petitioner has not shown that Monteith's testimony would have been favorable to him if elicited, and since his trial attorneys have not sworn in their affidavits that their failure to call Monteith or Hampton for anything other than trial tactics, Hill's claim for ineffective assistance of counsel on this issue must fail.

Secondly, Hill asserts that his trial counsel were ineffective by not objecting to Gregory Tucker's testimony concerning his manslaughter conviction. However, since this court previously ruled in this opinion that those matters that Hill's trial attorneys failed to object to would not serve to bar this court from considering them on the merits, then Hill has suffered no prejudice due to this failure to object. Accordingly, relief under *Strickland* on this claim is not proper.

Hill next argues that his counsel were ineffective in failing to recognize that the "last word" argument made by the prosecutor constituted error. Again, the court considered this claim on the merits as if Hill's trial counsel had objected thereto. Further, the court ruled that Hill is entitled to relief on this claim. Accordingly, the court again concludes that Hill suffered no prejudice as a result of his attorneys' omissions and therefore, his ineffective assistance of counsel claim must fail.

 Hill's next ground in support of his ineffective assistance of counsel claim is that his trial attorneys should have known that he only gave his consent to the search of his pickup truck after the truck had already been searched and that, for this reason, they should have objected to the admission of the U–Haul rental contract found as a result of the search. On the merits, the court ruled herein that knowledge of the time of the search and the time of Hill's consent was a matter which Hill's trial attorneys could have discovered before trial with due diligence. This would, standing alone, indicate that Hill's trial attorneys were ineffective in not discovering this information prior to the time of trial. However, the court herein also stated that

it was further of the opinion that the U–Haul contract would have been discovered anyway by a reasonable probability even if the search had not been conducted. Again, therefore, the court discerns no prejudice to Hill.

Hill next claims that his trial attorneys were ineffective in failing to seek a judicial order to enforce their discovery demands under Rule 4.06 of the Mississippi Uniform Criminal Rules of Circuit Court practice. In discussing this claim on its merits, the court ruled that the failure of the state to disclose to the defense that the penholder would be used at trial, and the penholder's later admission at trial, did not render the trial as a whole "fundamentally unfair" since this evidence, at most, only serves to corroborate the testimony of Gregory Tucker that Hill rented a U–Haul truck and used it to transport items that had been taken out of the American Freight Lines truck. The court therefore concludes that no prejudice to Hill resulted as a result of the admission of the penholder and, absent prejudice, the ineffective assistance of counsel claim is without merit.

Hill further contends that his trial attorneys were ineffective in failing to object to alleged prejudicial testimony regarding the victim's family and in further failing to request that this testimony be excluded and that curative instructions be given to the jury. As discussed previously, the questions to which Hill objects are those questions posed to the victim's widow asking "Did y'all have any children?", "What are their names and ages?", "Was he a good provider and a good family man?", and "Were the two girls close to Robert?". (Petitioner's brief at p. 46).

 Again, the court can discern no prejudice to Hill in that, without such testimony, the trial result would have been different. Gregory Tucker testified that Watkins, while pleading for his life, stated that he had kids (Tr. 1016). The names of the two children, that they were "close" to their father, and that Watkins was a good provider and family man are, in the court's opinion, irrelevant but not so prejudicial that, but for their omission, the results of the proceeding would have been different. *See Brown v. Butler*, 811 F.2d 938, 942

(5th Cir.1987) (once it is shown that representation fell below an objective standard of reasonableness, must also show the existence of a reasonable probability that but for counsel's errors, results would have been different).

· Hill next contends that his trial attorneys' failure to object to certain instances of alleged prosecutorial misconduct must result in a finding of ineffective assistance of counsel. However, since the court considered each and every claim asserted by Hill on the merits as though his attorneys had objected, and his claims of prosecutorial misconduct were found to not have been reversible error, then no prejudice has resulted to him as a result of any such failure to object on the part of his trial attorneys.

Hill further argues ineffective assistance of counsel with regard to his trial attorneys' failure to request a jury instruction on Hill's behalf regarding his alleged diminished mental capacity. In his prior discussion of the trial court's refusal to grant a jury instruction concerning Hill's alleged diminished capacity, the court noted that the Mississippi Supreme Court had found after its consideration of the evidence, that the instruction was not warranted by the evidence. This court concluded likewise after its review of the record. Therefore, there is no merit to this claim.

The petitioner further asserts that he was denied effective assistance of counsel on appeal since he was represented by the same attorneys who had represented him at trial, citing Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) in support of his argument. However, since this court has ruled that Hill did not receive ineffective assistance of counsel at trial, this claim is without merit.

Lastly, Hill argues that he received ineffective assistance of counsel with regard to the Tunica County hijacking case. In support of this argument, Hill states that after being arrested for the Tunica hijacking, he was provided with counsel who advised him to confess to his role in the Tunica robbery. The conviction for this crime was used in Hill's case for the DeSoto County hijacking and murder as an aggravating circumstance during the sentencing phase of the trial and was admitted during the innocence/guilt phase of the trial as a prior conviction. The court is of the opinion that any ineffective assistance of counsel rendered by the counsel who represented Hill on the Tunica hijacking charge cannot be used to support an allegation of ineffective assistance of counsel concerning the case at bar. See Gray v. Lucas, 677 F.2d 1086, 1092 n. 3 (5th Cir. 1982) (actions of petitioner's counsel for first trial have no bearing on issue of whether petitioner's attorneys for second trial provided petitioner with effective assistance at his second trial). Accordingly, this claim is without merit.

### Conclusion

In conclusion, the court is of the opinion that the petitioner Alvin Hill's sentence of death should be vacated due to the prosecutor's "last word" argument, the failure to instruct the jury that they could impose a life sentence even if they found no mitigating circumstances to exist and the introduction of a codefendant's testimony concerning his guilty plea and conviction.

A separate order shall issue.